Johnson, Chief Judge,
delivered the opinion of the court:
This is an appeal from a decision of the Patent Office Board of Appeals rejecting the single claim in appellant’s application No. 301,233,, filed July 28,1952j for “Fractionation Process,” as unpatentable over the prior art.
The claim reads as follows:
1. Process of fractionating a fluid mixture which comprises: feeding the mixture to a fractionating zone maintained under relatively high pressure; distilling overhead from the fractionating zone a component part of the feed mixture ; and reducing the pressure of the distilled vapor, whereby the vapor becomes superheated; introducing hereinafter specified condensate into the superheated vapor to desuperheat the same; passing the mixture while under reduced pressure to a cooling zone to effect condensation; returning a portion of the condensate to the upper part of said fractionating zone as reflux; and utilizing another portion of the condensate as said specified condensate which is introduced into the superheated vapor.
Appellant’s alleged invention relates to a process of fractionally distilling a fluid mixture wherein the pressure maintained in the fractionating column is greater than that maintained in the condenser. In its broad aspects, appellant’s process does not differ from the standard distillation processes well known in the art. Feed material is introduced into the fractionating column, low boiling point constituents are removed as vapor from the top of the column (the distillate) and higher boiling point constituents are removed from the bottom of the column (the “bottom.”) The distillate is passed through a condenser from which part of the condensate is returned to the top of the fractionating column as reflux and the remainder is removed from the system as product. Inasmuch as the pressure in the fractionating column is to be maintained at a level higher than that *861 in the condenser, a pressure reducing valve is placed in the distillate line between the top of the column and the condenser. By means of this valve, the pressure of the distillate vapor is reduced to that prevailing in the condenser. This much appellant admits is old in the art. The distillate vapor, however, upon emerging from the pressure reducing valve, becomes superheated. As appellant points out, the heat transfer coefficient for desuperheating a vapor is much less than the coefficient for condensing vapor which is at its dew point. To avoid the necessity for a large heat transfer, surface in the condenser (which would be required if the superheated vapor were passed di- . rectly from the pressure reducing valve into the condenser), appellant • recycles a portion of the condensate to a point between the pressure reducing valve and the condenser. This condensate, which is cooler than the superheated vapor, reduces the temperature of said vapor and permits the use of á smaller condenser surface than would be necessary if the vapor were not desuperheated. •
The ref erences relied upon are:
Cleaver et al., 2,537,259, Jan. 9, 1951. McCants, 2,565,568. ' Ang. 28, 1951.
Andersen, 2,619,453, Nov. 25,1952.
McCants discloses a process for fractionally distilling an aqueous solution of formaldehyde in the presence of an acetone reflux. The pressure maintained in the fractionating column is relatively higher than that in the condenser. The distillate is passed through a pressure reducing valve and then through a condenser, part of the condensate being returned to the top of the fractionating column as reflux.
The Anderson patent relates to a vapor-compression distillation process (more properly described as an “evaporation” process). Insofar as pertinent, Andersen discloses passing vapor from the evaporator through a .compressor and subsequently through a heat exchanger. Inasmuch as the vapors, upon being compressed, become superheated, Andersen recycles a portion of the condensate to a point between the compressor and the heat exchanger to reduce the temperature (de-superheat) of the compressed vapor to a point near its saturation temperature (dew point), but not beyond that point.
The Cleaver et al. disclosure, insofar as this appeal is concerned, is merely cumulative of the Andersen disclosure and need not be further discussed.
The examiner rejected appellant’s claim as unpatentable oyer Mc-Cants in view of either Cleaver et al. or Andersen and the board sustained this rejection. The board was of the opinion that McCants disclosed everything recited in the appealed claim except the recycling step to desuperheat the vapor. The board stated that it would be obvious to resort to the expedient of desuperheating as shown by Andersen and Cleaver et al.,
*862 * * * if it were found that the problem Of removing superheat existed in appellant’s process * * *.
It found no patentable merit in appellant’s argument that, in both Cleaver et al. and Andersen, the superheat in the vapors is caused by a compression step, which is the exact opposite of the expansion step which causes the superheating in appellant’s process.
Appellant urges this same argument here, as well as the contention that Andersen and Cleaver et al. disclose evaporation processes whereas his process relates to fractional distillation. In regard to the above quoted portion of the board’s opinion, appellant states:
This is begging the question. The point is that it was not obvious that pressure reduction in fractional distillation would cause a disadvantageous superheating condition to occur and hence it would not be apparent to the ordinary skilled person that any improvement would be effected in a fractional distillation process by recycling a part of the condensate to the vapor.
In support of his argument that it was not obvious that pressure redaction would cause superheating, appellant draws our attention to the examiner’s disbelief “that superheating would occur generally in the type of fractional distillation to which [appellant’s] improvement is directed.” [Emphasis added.] The examiner was of the opinion that “only certain materials will be superheated on adiabatic expansion, as other materials will be reduced below the dew point on expansion.”
We have carefully considered appellant’s arguments but we are not convinced that the board erred in sustaining the examiner’s rejection.
As aforesaid, except for his desuperheating step, appellant’s process was old in the art, as is shown by McCants. Andersen describes the expedient of recycling a portion of condensate to desuperheat vapor prior to condensation of that vapor, obviously for the same purpose as in appellant’s process.. We agree with the board that, if it were found that the problem of removing superheat existed in appellant’s process, it would not involve invention to desuperheat as in Andersen. That Andersen’s vapor becomes superheated due to compression thereof or that Andersen relates to an evaporation, as distinguished ' from a fractional distillation, process, is not deemed to be significant. There is no question but that the evaporation art is analogous to the distillation art. The Andersen disclosure is relied upon not for its overall teachings as to a fractional distillation process or an expansion step, but for its specific teaching of desuperheating a vapor prior to condensation thereof. The problem involved and the solution used to solve the problem are identical in the Andersen process and appellant’s.
The essence of appellant’s argument, of course, does not reside in a fine distinction between an evaporation and a fractional distillation process. Rather, it is in the contention that “it was not obvious that *863 pressure reduction in fractional distillation would cause a disadvantageous superheating condition to occur.” This is another way of saying that his invention resided in the concept or in the recognition of the problem to be solved. See In re Philip A. Shaffer, Jr., 43 C. C. P. A. (Patents) 758, 229 F. 2d 476, 108 USPQ 326; In re Pennington, 44 C. C. P. A. (Patents) 789, 794, 241 F. 2d 750, 113 USPQ 81. We think the fallacy in appellant’s argument is that in the light of normal and common techniques in the distillation art, the skilled artisan would become aware of any superheating condition which would occur, without any use of the inventive faculty. It is well known that pressure and temperature measurements are taken at numerous points in a distillation system. Such measurements must be taken if a still and its associated units are to be operated at maximum efficiency. It is hardly conceivable that one skilled in the art operating apparatus such as is shown in McCants would not take a pressure measurement at a point downstream of the pressure reducing valve or a temperature measurement at a point immediately upstream of the condenser. Unless this were done, the operator would not know if his pressure reducing valve were properly set or operating properly, nor would he know at what rate to pass his coolant through the condenser or what size condenser to use. Once having taken such measurements, the operator would immediately detect any superheating condition present, for superheating is a function of temperature and pressure. If it were found that superheating did exist, it would not involve invention to utilize a common recycling expedient to desuperheat, as is shown by Andersen and Cleaver et al.
For the foregoing reasons, the decision of the Board of Appeals is affirmed.
Jackson, J., Retired, recalled to participate was present at the hearing of this appeal but did not participate in the decision.